J-S02045-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: J.M.P., JR., J.M.P., J.R.P., AND J.P.R.P. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF C.P., MOTHER | No. 2502 EDA 2014 |

Appeal from the Order Entered July 24, 2014
In the Court of Common Pleas of Northampton County
Orphans' Court at No.: C-0048-OC-2012-0003

BEFORE:  MUNDY, J., OLSON, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                     **FILED FEBRUARY 10, 2015**

C.P. ("Mother") appeals the July 24, 2014 order that terminated her parental rights to J.M.P., Jr. (born in July 2009), J.M.P. (born in July 2009), J.R.P. (born in May 2010), and J.P.R.P. (born in January 2012) (collectively "the Children").  We affirm.

The record supports the following summary of the factual history of this case.  Around February 2010, Mother, the Children,[1] and J.P. ("Father") moved to Pennsylvania.  After living with one of Father's relatives, the family moved into a motel.  In May 2010, a referral was made to the Northampton County Department of Children, Youth and Families ("Agency") that Mother

---

[1]      At that time, J.P.R.P. had not yet been born.

was yelling at and slapping the Children. The Agency placed Mother and the Children in a shelter.[2] Father's whereabouts were unknown at that time.[3]

While living in the shelter, Mother received services from the Valley Youth House Family Preservation Program, but Mother was uncooperative and unwilling to learn. Mother also was unwilling to participate fully in intake, and she was discharged unsuccessfully. On July 23, 2010, Mother was discharged from the shelter for failing to follow the rules. Mother had left the Children unattended, had not maintained cleanliness, and had problems with staff members.

On July 26, 2010, the Agency obtained custody of J.M.P., Jr., J.M.P., and J.R.P. through an Emergency Shelter Care order. On September 1, 2010, those three Children were adjudicated dependent. Mother and Father were directed to attend parenting education, to have psychological evaluations, and to maintain housing and a stable income. Mother also was ordered to comply with any recommended psychological treatment, to cooperate with in-home services, and to submit urine screens. Father was required to undergo a sex offender evaluation.

---

[2] At the time that the family was moved into the shelter, another older child, D. (born in May 2008), also was living with Mother. D. is not subject to the proceedings at issue in this appeal.

[3] On May 25, 2010, Father was arrested for an alleged violation of the registration requirements of the Sex Offender Registration and Notification Act, 42 Pa.C.S.A. §§ 9799.10, *et seq.*

Initially, during supervised visits, Mother made accusations that the Children were being physically and sexually abused in their foster placements. However, she stopped making these accusations in early 2011. Mother had her evaluation and began attending psychotherapy.

In April 2011, Father was acquitted of his charges and began to live with Mother. In July 2011, Mother lost her job and was incarcerated following a domestic dispute with Father. In September 2011, at a permanency review, Father had not obtained his psychological evaluation. Because Father was acquitted of violating sex offender reporting obligations, the court removed the sex offender evaluation requirement. In December 2011, Mother's visits were reduced because she would not provide an address and she stopped attending therapy.

J.P.R.P. was born in January 2012. She was taken into Agency custody the next day and was adjudicated dependent on January 31, 2012. On January 26, 2012, the Agency filed petitions to terminate Mother's and Father's parental rights to the three older Children. On April 23 and 24, 2014, the court held hearings on the petitions. At the end of the April 24, hearing, the parties agreed to hold the petitions in abeyance to allow Mother and Father another opportunity to comply with Agency requirements. The parties agreed that Mother and Father would provide an address, that Father would undergo a psychological evaluation and would provide a release for information related to sex offender evaluations in Florida, and that Mother would resume therapy and cooperate with Agency services.

During the period in which the petitions were suspended, the parents provided an address. However, Father did not attend his visits regularly with the Children. Since April 2012, Father has had no further contact with the Agency or with the trial court.

Mother did not attend therapy beyond the intake appointment. Mother missed many of her visits as well; some were cancelled due to Mother contracting cellulitis, some due to Mother's incarceration from August 2012 until October 2012 for contempt of a domestic relations order, and some for other reasons. Mother has not seen the Children since August 2012. On December 27, 2012, Mother gave birth to another child who is not subject to this termination proceeding. On January 17, 2013, the Agency filed a petition to terminate Mother's and Father's parental rights to J.P.R.P.

The trial court held an additional hearing on the termination petitions on February 14, 2013. At that hearing, Mother testified that she was living in Allentown.

The trial court summarized the remaining procedural history as follows:

On February 14, 2013, the last portion of the hearing on all the dependencies was held and the prior proceedings were made part of the record. All termination proceedings were attended by Mother, counsel for Mother, counsel for Father, counsel for the Agency, and the [C]hildren's guardian *ad litem*. Father only attended the first termination proceeding, at which he was not called to testify.

On February 14, 2013, prior to the commencement of hearing, the [trial court] heard and considered Mother's petition to terminate the dependencies, which it denied. Subsequently,

- 4 -

both Mother and Father separately appealed the [trial court's] denial of Mother's dismissal petition. The Superior Court ruled on Mother's appeal by an Order entered March 10, 2014; and it ruled on Father's appeal on April 14, 2014. In both cases, it affirmed the trial court's denial of the petition to dismiss the dependencies. Mother also sought allocatur to the Supreme Court of Pennsylvania, which was denied by an Order entered on May 29, 2014. At that junction, [the trial court] was finally[] able to consider the Agency's petitions. . . .

Trial Court Opinion and Order ("T.C.O."), 7/24/2014, at 2.

On July 24, 2014, the trial court terminated the parental rights of Mother and Father pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). On August 13, 2014, Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On August 19, 2014, the trial court filed a Rule 1925(a) statement and referred this Court to the reasoning set forth in its July 24 opinion and order.

Mother raises two issues in her appeal:

1. Whether the trial court abused its discretion and committed an error of law by terminating Mother's parental rights when such determination was not supported by clear and convincing evidence under 23 Pa.C.S.A. § 2511(a)(1), (2), (5) and (8)?

2. Whether the trial court [] abused its discretion by terminating [Mother's] rights where the trial court failed to acknowledge and discern the nature of the parental child bond and failed to determine whether termination would destroy the existing relationship in violation of 23 Pa.C.S.A. § 2511(b)[?]

Mother's Brief at 4.

Our standard of review is as follows:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

It is well-settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by clear and convincing evidence, which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004).

- 6 -

The trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511 which states, in pertinent part, as follows:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

* * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

* * *

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

The trial court found grounds to terminate Mother's parental rights pursuant to sections 2511(a)(1), (2), (5), (8), and (b).  However, this Court only needs to agree with the trial court's conclusions with regard to one subsection of 23 Pa.C.S.A. § 2511(a), in addition to section 2511(b), in order to affirm the termination of parental rights.  *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).  Termination is a two-step process, in which a trial court first must determine if the grounds under subsection (a) are met, and then it must consider subsection (b).  *See In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*).  The focus in terminating parental rights under section 2511(a) is upon the parent, while section 2511(b) focuses upon the child.  *Id.* at 1008.

Because we need only agree with one subsection of 2511(a), we proceed to analyze subsection (a)(2).  To satisfy the requirements of subsection 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued

- 8 -

incapacity, abuse, neglect, or refusal; (2) such incapacity, abuse, neglect, or refusal caused the child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under subsection 2511(a)(2), parental incapacity that cannot be remedied, are not limited to affirmative misconduct. Grounds pursuant to this subsection may include refusal, as well as incapacity, to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

Mother argues that she remedied the issues that led to the Children's dependency. Mother contends that she was able to obtain housing and a stable income. Mother states that she attended parenting classes. Further, Mother argues that she fulfilled the counseling requirement until she "did not feel that such therapy was beneficial to the return of her children." Mother asserts that she made "significant progress" on her goals. Mother's Brief at 11-14.

The trial court relied upon Mother's failure to see the Children since 2012 as the principal fact to support its findings that Mother refused to parent the Children and was unwilling to remedy that situation. *See* T.C.O. at 15.

There were concerns about Mother's parenting skills while she was at the shelter. Notes of Testimony ("N.T."), 4/23/2012, at 27. Mother declined

to receive parenting services from the Visiting Nurse Association, which led, in part, to Mother's dismissal from the shelter. *Id.* at 34. Mother also was uncooperative with the services and staff at the shelter. *Id.* at 34-35. Mother refused to consider the suggestions and advice from the people trying to provide parenting education. *Id.* at 57.

Kelly Warnke, a former caseworker, testified that Mother complied with the psychological evaluation, but her participation in subsequent therapy was sporadic. *Id.* at 86. Ms. Warnke testified that Mother made progress on her goals until Father was released from jail. At that point, Mother became less compliant. *Id.* at 88. Shortly thereafter, Mother was jailed because of a domestic violence incident with Father. *Id.* at 89. Mother handled the Children roughly during visits. *Id.* at 95. Mother was not responsive to suggestions to change her treatment of the Children. *Id.* at 96.

From March to October 2011, Mother attended only eighteen of thirty scheduled therapy appointments. *Id.* at 122-23. Mother's therapist testified that, although Mother initially made progress, she experienced more difficulty with anger and coping as time passed. Mother then became less cooperative and more defensive. *Id.* at 125-27, 140. The therapist concluded that "there wasn't a whole lot of progress made." *Id.* at 128. Mother was discharged from therapy for failing to attend sessions. *Id.* at 131.

Helen Willis, a parenting instructor, also testified that Mother initially made progress, but then seemed to forget what she had learned. *Id.* at 148. The parenting instruction was terminated because Mother missed three consecutive visits and her location was unknown. *Id.* at 151. However, Ms. Willis found that Mother was affectionate with the Children during visits, that the Children were affectionate with Mother, and that there was a bond between Mother and the Children. *Id.* at 153, 157. Marie Apgar, an Agency case aide who supervised visits, also testified that the Children were affectionate with Mother, giving her hugs and kisses, and that they called her "Mom." N.T., 4/24/2012, at 204.

Mother admitted that she was discharged unsuccessfully from mental health treatment and that she did not return to treatment. N.T., 2/14/2013, at 34. However, Mother maintained that treatment only was required to help her cope with the Children being removed from her care and that there was no other need for treatment. *Id.* at 34-35.

Moriah Harms, an Agency caseworker, testified that, in April 2012, the Agency offered and arranged for Mother to visit with the Children in the community or at the Agency while in-home services completed its intake process and home visits could begin. *Id.* at 55-56. However, Mother refused to participate in those visits because they were not in her home. *Id.* at 56. Ms. Harms also testified that Mother had not provided any evidence, such as a lease or utility bills, to prove where she was living. *Id.* at 83-84.

Ms. Harms affirmed that Mother had not complied with the counseling requirements in the Children's permanency plan. *Id.* at 86-87.

The record demonstrates that there were concerns with Mother's ability to care for the Children, particularly Mother's parenting skills, housing and income, and mental health issues. Despite initial progress, the record supports the conclusion that the concerns continued and caused the Children to be without Mother's parental care. Mother has failed to remedy those concerns. Our review of the record supports the finding that the Agency proved by clear and convincing evidence that termination was warranted pursuant to subsection (a)(2), and that the trial court did not abuse its discretion in so finding.

We next review the trial court's conclusion that subsection 2511(b) was met. The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). As part of this determination, our case law requires the evaluation of any parent-child bond. *In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). However, this Court has held that the trial court is not required to order a formal bonding evaluation performed by an expert. *In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa. Super. 2008).

The trial court analyzed the Children's best interest in a conclusory fashion. The trial court correctly sets forth the legal standard of subsection (b). T.C.O. at 12-13. The trial court made a finding of fact that the Children are thriving and their needs are met in their foster homes. T.C.O. at 10.

The closest that the trial court came to discussing subsection (b) is in its conclusions of law, in which, pursuant to subsections 2511(a)(5) and (8) and the goal change, it concluded that the termination is in the Children's best interests. *Id.* at 17.

As noted above, once the trial court determines that the parent's conduct satisfies the requirements for termination pursuant to subsection 2511(a), it must then turn its focus to the child's best interest, which is a distinct analysis. *In re I.G.*, 939 A.2d 950, 955-56 (Pa. Super. 2007). The court must consider the bond between the parent and child, and if it finds a bond, must consider the effect on the child of severing that bond. *Id.* at 956. "[O]ffer[ing] only a cursory conclusion without supporting evidence on the bond between [the child] and Mother . . . will not suffice." *In re C.P.*, 901 A.2d 516, 522 (Pa. Super. 2006).

The trial court has not adequately discussed the Children's best interests in its opinion. Further, there was evidence of a bond between Mother and the Children. Ms. Willis testified that Mother and the Children were affectionate with each other and that there was a bond between Mother and the Children, and Ms. Apgar testified that the Children called Mother "Mom." Therefore, the court not only had to consider the bond, but also the effect of severing that bond. The trial court offered no analysis in its opinion, and, instead, offered only conclusory statements.

However, in this case, the record provides sufficient evidence to support the trial court's conclusion that termination was in the Children's

- 13 -

best interest, which was not the case in *I.G.* and *C.P.* In *I.G.*, the evidence suggested a bond between the father and the children. *I.G.*, 939 A.2d at 956. However, there was no record evidence regarding how termination would affect the children. The trial court recognized that deficiency, but relied solely upon the fact that the children had not seen their father in a year. *Id.* at 957. This Court remanded the case to allow the parties to present evidence concerning the bond between the father and the children, stating that the trial court's "conclusion that termination would have no effect on the children, *without evidence of such*, cannot stand." *Id.* at 957 (emphasis added).

Similarly, in *C.P.*, the record was "devoid of any evidence concerning the effect that termination would have on [the child]." *C.P.*, 901 A.2d at 522. Furthermore, the trial court provided no analysis of the child's best interests or of the impact of termination upon the child. "*Without competent evidence of record* to support the trial court's decision to terminate [the mother's] parental rights," this Court remanded the case for further development of the record. *Id.* at 523 (emphasis added).

Here, however, the trial court received competent record testimony addressing the Children's bond with Mother, the Children's best interest, and the effect of termination upon the Children. Ms. Harms testified that the Children did not speak about Mother or Father. N.T., 2/14/2013, at 60. She opined that the Children would not be harmed by termination of Mother's parental rights because Mother had not had consistent visits nor seen the

Children since the summer of 2012. The Children did not express an interest in seeing Mother. The Children were doing well in foster care and were happy and well-adjusted. *Id.* at 62. Ms. Harms further opined that termination was in the Children's best interests because Mother had not addressed the Agency's concerns. *Id.* at 88-89, 91.

"It is a serious matter for the long arm of the state to reach into a home and snatch a child from its [parent]. It is a power which a government dedicated to freedom for the individual should exercise with extreme care. . . ." *I.G.*, 939 A.2d 958 (quoting *In re Rinker*, 117 A.2d 780, 783 (Pa. Super. 1950)). Here, the trial court should have exercised more care in its analysis and should have provided a more thorough discussion of subsection (b). However, because our independent review demonstrates that sufficient evidence supported the trial court's conclusion that termination was in the Children's best interests, we need not remand this case as we did in *I.G.* and *C.P.* These Children, who have been dependent since 2010 and 2012, respectively, deserve permanency. Remand would frustrate this goal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/10/2015</u>